MEMORANDUM ***
Jimmie E. Evans appeals the district court’s judgment affirming the Commissioner of Social Security’s (“Commissioner”) final decision denying his application for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.[1]
1. We agree with Evans that the Administrative Law Judge (“ALJ”) erred in rejecting the opinions of the treating physician, Dr. Bogart, and the examining physician, Dr. Villanueva, in favor of the opinion of the reviewing physician, Dr. Dragovich.[2] “By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.” Orn v. Astrue, 495 F.3d 625, 631 (9th Cir.2007). Thus, the medical opinion of a treating physician is to be given more weight and, in fact, controlling weight if it is “well-supported by medically acceptable clinical and laboratory diagnostic techniques and is mot inconsistent with the other substantial evidence.” 20 C.F.R. § 404.1527(d)(2). If the medical opinion of a treating physician is not given controlling weight, the factors listed in the regulation are to be considered in determining the weight to be given to the opinion. Id. Those factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. Id. §§ (d)(2)(f), (ii); (d)(3)-(6).
Dr. Bogart has been treating Evans since 2001, and he saw Evans at least ten times after his initial evaluation.[3] Dr. Bogart is a neuropsychiatrist; therefore, these are “medical issues related to his ... area of specialty.” Id. § (d)(5). Dr. Bogart’s opinion is consistent with the opinions of Dr. Villanueva and Dr. Higgins- *595 Lee, both examining physicians, as well as with all of the other medical opinions, diagnoses, and evaluations of Evans. For example, Dr. McCullough, who began treating Evans in 2002, described Evans as limited to a sedentary level of activity due to his physical ailments and psychiatric limitations, which included post-traumatic stress disorder (“PTSD”) and “bipolar with schizophrenic features.” The record consistently indicates that, in addition to his numerous physical ailments, Evans had significant psychiatric/psychological and social problems, as well as difficulties with anger, concentration, and intellectual functioning that would affect his ability to work.[4]
Dr. Bogart’s opinion should be given controlling weight because it is “well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence” in the record. 20 C.F.R. § 404.1527(d)(2). In addition, Dr. Bogart’s opinion was not contradicted by any treating or examining physician, but only by a physician who reviewed the record and whose opinion the ALJ adopted.
When a treating physician’s opinion is contradicted by another physician, the ALJ may not reject the treating physician’s opinion “without providing ‘specific and legitimate reasons’ supported by substantial evidence in the record.” Orn, 495 F.3d at 632 (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995)). The opinion of an examining physician who relies on the same clinical findings as a treating physician “but differs only in his or her conclusions,” does not constitute substantial evidence. Id. Rather, in order to reject the treating physician’s conclusions, the ALJ must point to “ ‘independent clinical findings that differ from the findings of the treating physician.’ ” Id. (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985)). “Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered.” Id. (citations omitted).
The ALJ did not point to any conflicting clinical evidence or make findings to indicate why Dr. Bogart’s opinion should be rejected. Dr. Bogart, a medical doctor, examined and treated Evans at least ten times. Dr. Villanueva, a neuropsychologist, examined Evans. Dr. Dragovich, a Ph.D., reviewed Evans’s record and came to a different conclusion from Drs. Bogart and Villanueva. Dr. Dragovich did not make any diagnoses or rely on clinical *596 findings or objective medical tests that Evans’s treating and examining physicians overlooked. The ALJ’s adoption of Dr. Dragovich’s opinion and rejection of the opinions of Evans’s treating and examining physicians (and, in fact, the numerous other medical opinions contained in the record) are not supported by the record.
Even if the ALJ finds the treating physician’s medical opinion not well-supported or inconsistent with the record, this “means only that the opinion is not entitled to ‘controlling weight,’ not that the opinion should be rejected.” Id. (quoting Social Security Ruling 96-2p). In such a case, the ALJ is to consider the factors enumerated in 20 C.F.R. § 404.1527(d)(2), such as the length of the treatment relationship and the frequency of examination. Here, the ALJ did not consider any of the requisite factors in determining the weight to be given Dr. Bogart’s opinion. The ALJ therefore erred in failing to comply with the regulation setting forth how to treat medical opinions. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir.1990) (stating that “[fjederal statutes, administrative regulations and Social Security rulings together form a comprehensive scheme of legal standards that ALJs must follow in determining whether a claimant is entitled to disability benefits”) (footnote omitted).
2. We agree with Evans that the post-hearing evidence he submitted supported his argument that the ALJ’s decision was not supported by substantial evidence. See Vasquez v. Astrue, 547 F.3d 1101, 1109 (9th Cir.2008) (stating that, “if the Appeals Council had remanded the case for additional review, [the evidence submitted following the ALJ’s decision] would have enhanced the information available to the ALJ and provided additional, rather than contradictory, evidence of Vasquez’s condition”). The post-hearing evidence submitted by Dr. McCullough and Dr. Moulton was material because it substantiated all of the other medical evidence in the record that the ALJ improperly rejected. Further, Dr. McCullough’s August 10, 2004, letter, describing Evans’s “near death experience” during a twelve-day stay in intensive care, numerous problems related to his diabetes, and his need for a liver transplant, indicated that Evans’s physical ailments had become more serious and should have been considered in a determination of disability.
3. “Lay testimony as to a claimant’s symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.” Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001). An ALJ may discount lay testimony if it conflicts with medical evidence. Id. The ALJ rejected the testimony of Evans’ lay witnesses by citing anecdotal evidence that Evans, for example, “attended school and church, and worked out at a gym, ... used the internet and managed some household chores.” The ALJ also cited Evans’ ability to do things such as work on his car and attend community college.
“ ‘This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability.’” Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.2001)). Instead, “[t]he ALJ must make ‘specific findings relating to [the daily] activities’ and them transferability to conclude that a claimant’s daily activities warrant an adverse credibility determination.” Id. (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.2005)) (second alteration in original).
The ALJ did reason that the fact that Evans takes GED courses indicates that *597 he has the ability to concentrate and complete tasks within a schedule. Unfortunately, the ALJ did not take into consideration Evans’ January 2004 elbow surgery and the resultant complications, or his complications due to his need for a liver transplant. Moreover, the November 2004 letter by Dr. Moulton indicated that Evans’ GED courses were “self-paced,” indicating that he did not need to adhere to a schedule that was imposed on him.
Because we conclude that the ALJ improperly rejected the opinions of Evans’s treating and examining physicians, the ALJ’s finding that the lay witness testimony was contradicted by the medical evidence also is not supported by the record.[5]
4. As to the finding that Evans could perform other relevant work, the hypothetical posed to the vocational expert was faulty because it did not include all of Evans’s limitations. Here, the ALJ stated in step two of the five-step analysis that Evans “has the following severe impairments: a past history of back trauma; liver disease with hepatitis C and cirrhosis; degenerative changes of the left elbow with arthroplasty; status-post right hand fusion; an organic brain disorder; and a history of substance abuse now in sustained remission.” If an ALJ finds severe impairments at step two, those impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523.
“ ‘Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant....’” Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir.1989) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988)). The ALJ posited that Evans was able to perform light work, which requires “maximum lifting of twenty pounds and frequent lifting of ten pounds,” as well as a limitation of “walking no more than 4 hours a day.” This hypothetical does not take into account the impairments that the ALJ found. In addition, because of the ALJ’s improper rejection of the opinions of Evans’ examining and treating physicians, the failure to take into account the additional evidence, and the rejection of the lay witness testimony, “the hypothetical posed to the vocational expert was legally inadequate.” Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir.2006).
For the foregoing reasons, the judgment of the district court is reversed and the case remanded with instructions to remand to the Commissioner for further proceedings consistent with this disposition.
REVERSED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

.The district court’s decision upholding the denial of social security benefits is reviewed de novo. Gillett-Netting v. Barnhart, 371 F.3d 593, 595 (9th Cir.2004). “The Commissioner’s denial of benefits may be set aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record.” Id.

. Because the parties are familiar with the complicated factual and procedural background, we do not recite it here, except as necessary to aid in understanding this disposition.

. Contrary to the ALJ's statement that Dr. Bogart found Evans' diagnoses "confusing,” Dr. Bogart actually indicated that there was no uncertainty regarding whether or not Evans had limitations in his daily living activities, but that neuropsychiatric testing was needed in order to determine the extent of those limitations.

. Evaluations by Russ Howard and Dr. Higgins-Lee indicated post-traumatic stress disorder, rheumatoid arthritis, borderline intellectual functioning, and deficiencies in concentration. Dr. Villanueva's neuropsy-chological examination found deficiencies in processing, memory, and the "ability to integrate visual and motor activity." Dr. McCullough, Evans’ primary care physician for over two years, diagnosed Evans with, among other ailments, hepatitis C, back pain, osteoarthritis, bipolar disorder, PTSD, impulse control problems, and impaired ability to concentrate. Treating physician Dr. Weingarten reported hepatitis C and a possible back strain causing back pain. Dr. Leslie, an examining physician, diagnosed hypertension, osteoarthritis, back pain, PTSD, and impulse control disorders. Dr. Van Anrooy examined and treated Evans for elbow pain and swelling from a degenerative joint disease, and he performed surgery on Evans's elbow. The ALJ's findings that Evans does not, for example, have PTSD or arthritis are directly contradicted by the record. In addition, although the ALJ relied on testing by Ben Ross to support his rejection of Dr. Villanueva's opinion, Ross' findings of "low” "cognitive aptitudes” and “significant cognitive weakness” in processing information are consistent with Dr. Villanueva's findings.

. In addition, we find specious the ALJ’s statement that the lay witnesses' testimony was not credible because it was consistent with tile claimant’s position. The lay witness testimony was based on the witnesses' "independent observations of the claimant's pain and other symptoms,” and therefore could be discounted only if the ALJ gives "reasons that are germane to each witness.” Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993).